TRINA A. HIGGINS, United States Attorney (7349)
JOEL A. FERRE, Assistant United States Attorney (7517)
Attorneys for the United States
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
joel.ferre@usdoj.gov

## UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>SKYWEST INFLIGHT ASSOCIATION.,<br><br>Defendant. | **AMENDED COMPLAINT**<br><br>Case No. 2:24-cv-00492<br><br>Chief Magistrate Judge Pead |

Plaintiff Julie A. Su, Acting Secretary of Labor, alleges as follows:

### NATURE OF THE ACTION

1. The United States Department of Labor (DOL) seeks a declaration that elections held by SkyWest InFlight Association (SIA), a labor organization, are void, and an order directing SIA to conduct new elections, with new nominations, for representatives, president, vice-president, and secretary under DOL's supervision.

2. The frequency and method of electing officers of a labor organization depends on whether the organization is characterized as local or national.

3. Whether a labor organization is local or national depends on its functions and purposes (including how the labor organization is structured), not how it labels itself or even the geographical dispersal of its members.

4. Viewed through the lens of how labor organizations commonly operate—both in terms of functions and purposes—SIA is a local labor organization. SIA's function and purpose is to perform the day-to-day operations typical of local labor organizations such as negotiating the basic terms of collective bargaining agreements, enforcing those agreements, handling grievances, collecting dues, and disciplining dissident members. In addition, SIA is not affiliated with subordinate or parent labor organizations, and like other local labor organizations, SIA is the organizational body closest to its membership.

5. Because it is a local labor organization, SIA must hold elections at least every three years and those elections must be by secret ballot of its direct membership.

6. SIA failed to hold elections every three years by secret ballot of its direct membership. In recent elections, SIA did not properly notify its members of elections and improperly disqualified two candidates. These failures invalidated those elections.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

8. This Court may exercise personal jurisdiction over SIA because SIA maintains its principal office in this district.

9. Venue is proper this district pursuant to 29 U.S.C. § 482(b); 28 U.S.C. § 1331; 28 U.S.C. § 1345; and 28 U.S.C. § 1391(b).

## PARTIES

10.     Plaintiff Julie A. Su is Acting Secretary of the United States Department of Labor. DOL, acting through its Acting Secretary, is authorized to bring this action under the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 482(b) (LMRDA).

11.     SIA is, and at all times relevant to this action has been, an unincorporated association residing within, and maintaining its principal office in, Salt Lake County, Utah, within the jurisdiction of this district.

## FACTUAL ALLEGATIONS

12.     SIA has existed as a labor organization since at least 1999.

13.     SIA is the only labor organization that represents SkyWest Airlines flight attendants. As such, it is the only authorized representative body SkyWest Airlines recognizes to speak and negotiate on behalf of SkyWest Airlines' flight attendants.

14.     SIA interacts with SkyWest Airlines management on behalf of its members "on issues that affect the lifestyle, workplace environment, compensation and Flight Attendant policy." SIA First Bylaws § 5 (July 18, 2023).

15.     SIA has approximately 4,100 members dispersed across the United States, Canada, Mexico, and the Bahamas.

16.     Any SkyWest flight attendant who is on the seniority list, has successfully completed an initial operating experience, and is not in a salaried full-time management position is eligible for membership.

17. SIA's organizational structure is void of hierarchy: SIA is not and has never affiliated with subordinate or parent labor organizations, and like other local labor organizations, SIA is the organizational body closest to its membership.

18. SkyWest Airlines funds SIA's operations and because of this, SIA's members pay no membership dues.

**SIA Failed to File Reports and Disclosures**

19. Labor organizations engaged in an industry affecting commerce must file two reports. *See* 29 U.S.C. §§ 402(i), 402(j), 431(a).

20. The first report must list the name of the organization, name and title of each officer, the amount of member fees, and verify that operational procedures exist. This report must include a copy of the organization's adopted constitution and bylaws. 29 U.S.C. § 431(a).

21. The second report must list the organization's assets, liabilities, receipts, salaries, disbursements, and loans to officers, employees and businesses. This report must be filed annually. 29 U.S.C. § 431(b).

22. Despite existing as a labor organization engaged in an industry affecting commerce for years and thus being required to file these two reports, SIA filed neither before 2024.

**Because SIA Looks and Acts Like a Local Labor Organization, it Must Hold Elections Every Three Years by Secret Ballot of its Direct Membership**

23. Since July 2023, SIA has adopted several versions of bylaws that have changed and at times contradicted each other.

24. SIA's bylaws, when considered collectively, outline the functions, purposes, and structure typical of local labor organizations.

4

25. SIA's bylaws initially described its purposes and functions as such:

> SIA is the representative advocating body for all SkyWest Airlines Flight Attendants. We listen to Flight Attendant concerns and propose solutions. We stand for a positive work environment and creating a culture that values every Flight Attendant. We believe in doing all we can for our Flight Attendants. SIA shall represent the Flight Attendant group while interacting with SkyWest Airlines Management on issues that affect the lifestyle, workplace environment, compensation and Flight Attendant policy."

SIA First Bylaws § 5 (July 18, 2023).

26. SIA's most recent bylaws amended the description of its purposes and functions to include the word "national":

> SIA is the *national* representative advocating body for all currently employed SkyWest Airlines Flight Attendants, including *national* industry issues. We listen to Flight Attendant concerns and propose solutions. We stand for a positive work environment and creating a culture that values every Flight Attendant. We believe in doing all we can for our Flight Attendants. SIA shall represent the Flight Attendant group while interacting with SkyWest Airlines Management on *national* issues that affect the lifestyle, workplace environment, compensation, and Flight Attendant policy."

SIA Fourth Bylaws § 3 (March 27, 2024) (emphasis added).

27. These most recent bylaws also removed any language that might have suggested it was a local labor organization.

28. SIA thus labeled itself a "national" labor organization without actually changing its functions or purposes to those associated with national labor organizations.

29. SIA applied the "national" label to itself despite being told by DOL just days earlier that it could not self-identify as a national labor organization. In doing so, DOL explained that the focus is properly on an organization's actual functions, purpose, and structure, not the label an organization applies to itself.

5

30. At the same time, DOL explained that because SIA is structured like a local labor organization—being the organizational body closest to its membership and lacking subordinate union bodies—it must hold elections every three years instead of the five years permitted national labor organizations.

31. DOL finally explained that three-year elections were required because SIA performs the functions typical of local labor organizations. SIA performs, DOL explained, the kind of day-to-day functions expected of a local labor organization "such as policing collective bargaining agreements, disposing of grievances, collecting membership dues and disciplining dissident members."

32. SIA performs a wide-range of functions directly for its members that are typical of local labor organizations:

   a. Holds board meetings where official business is conducted and allows its members to attend;

   b. Disciplines its members and officers;

   c. Negotiates collective bargaining agreements with SkyWest;

   d. Negotiates "the policies and procedures of SkyWest's InFlight Operations Department;"

   e. Enters into agreements with SkyWest that govern the terms and conditions of employment of its members;

   f. Negotiates employee grievance, corrective action, and termination policies with SkyWest and represents its members in adverse employment actions against SkyWest;

   g. Permits its members to submit official grievances against SkyWest through SIA's website;

   h. Reviews the aggrieved members' file and discusses the grievance issues with management;

6

    i. Negotiates employee grievance policies wherein SIA will consider the facts presented by the flight attendant, decide whether the grievance is valid, and discuss the grievance with SkyWest without the employee being present.

33. SIA is organized into three levels: members, representatives, and executive officers (president, vice president, and secretary).

34. Representatives are directly elected by secret ballot of SIA's members, serve staggered, four-year terms, and comprise the Board of Representatives.

35. Representatives are allowed to vote on official business during Board meetings.

36. Representatives may extend their term of office beyond four years if elected as an executive officer.

37. Whether serving solely as a representative or an extended term as an executive officer, representatives have historically exceeded the three-year term proscribed by law. *See* 29 U.S.C. § 481(b).

38. Prior to 2024, candidates for representative were not required by SIA's bylaws to pledge loyalty to SIA. Once elected, however, candidates were required to pledge loyalty to actually serve as representatives. SIA Second Bylaws § 13(A)(2) (December 12, 2023).

39. SIA added a loyalty pledge to candidate qualifications starting in 2024. SIA Third Bylaws § 12 (January 10, 2024).

40. SIA's bylaws have not permitted and do not now permit its members to be candidates for executive offices. Instead, SIA's bylaws at all relevant times have allowed only incumbent representatives to run for executive offices.

41. Executive officers serve concurrently as elected representatives, and only incumbent representatives can nominate candidates for executive office positions. Nominations for executive office positions are subject to a plurality confirmation vote by the Board, which

7

functions as a quasi-primary election. SIA's membership then elects executive officers by secret ballot from the nominations confirmed by the Board.

42. SIA has historically prevented its members from directly electing executive officers by confirming only one nomination for each executive office position. When the Board confirms only one nomination for an executive office position, SIA foregoes a direct election by members and deems the nominee elected by acclamation.

43. Although SIA's bylaws establish three-year terms for executive officers, SIA has not elected executive officers on a three-year cycle. Instead, SIA has relied on ad-hoc elections as vacancies arose.

44. The holding of ad-hoc elections combined with representatives serving concurrently as executive officers has had the effect of executive officers serving more than three years.

45. DOL believes the last regularly scheduled elections for executive officers followed these acclamation and ad-hoc election procedures.

**The Chaos of SIA's Recent Representative Elections**

46. SIA's recent elections in August 2023 suffered from irregularities and are invalid.

47. SIA held an election for two representatives in August 2023. SIA's members voted in the August 2023 election using an internet platform administered by Vote-now.com LLC.

48. After the August 2023 election ended, Vote-now.com would not certify the election of representatives because a significant percentage of the votes cast came from suspect

voter codes. Vote-now.com noted this irregularity indicated that voter codes were used by someone other than the original member to vote.

49. Vote-now.com recommended new elections using unique voter credentials.

50. SIA emailed its members explaining that the August 2023 election for representatives "appears to have been tampered with" and voided the election results.

51. Following the failed August 2023 election, SIA had the election process investigated. The investigation revealed a former SIA executive officer and possibly a few other members had successfully cast the votes of over 300 other members. Several more attempts were blocked because the actual member had already voted.

52. SIA rescheduled elections for January 2024 to fill the two representative positions that were unfilled during the August 2023 election.

53. SIA emailed its members on December 15, 2023, explaining that the January 2024 election would use a more secure platform. The email provided a beginning date of the election but no closing date. The email also failed to tell SIA's members that the January 2024 election was for two representative positions not filled in the August 2023 election.

54. Four days later, SIA emailed its members explaining that the January 2024 elections would be for two representative positions, but this email, like the previous one, did not provide an election closing date and time.

55. When voting opened for the January 2024 Election, SIA emailed its members telling them for the first time when voting would close.

56. SIA emailed its members again two days later telling them that voting would close on the following day.

57. SIA never mailed an election notice for the January 2024 election to each member's last known home address.

**SIA's Protest and Grievance Procedures**

58. At the time of the January 2024 election, SIA's bylaws contained no election protest procedures.

59. SIA has since changed its bylaws. SIA's bylaws now require internal election protests to be filed "no later than seven (7) calendar days following the conclusion of the election." Fourth Bylaws § 8 (March 27, 2024).

60. While SIA's bylaws contained no election protest procedures that applied to the January 2024 election, SIA's 2023 Flight Attendant Policy Manual did have grievance policies and procedures in a document titled <u>Corrective Action Review, Grievances, and Termination Appeals Procedures Standard Practice 2325</u>.

61. Under these grievance policies, a SIA member could submit an official grievance through SIA's website when the member did not agree with a SkyWest response.

62. When any SIA member submitted a grievance, the member agreed to permit SIA to review the member's file and discuss the grievance with SkyWest management.

63. These policies also established a four-step process SIA would follow in disposing of grievances:

> 1) SIA will consider all of the facts presented by the flight attendant and make a determination as to whether the grievance is valid. 2) When SIA agrees the grievance is valid, the grievance is reviewed and discussed with the appropriate Company personnel. The flight attendant may voluntarily choose to be present at a meeting when his/her grievance is being presented; however, the flight attendant must communicate this to SIA. Once discussed, the flight attendant (if not present at the meeting) is notified by SIA as to the outcome of the grievance and the grievance is

closed. 3) When SIA finds the grievance is not valid, the flight attendant is notified by SIA and the grievance is closed. 4) Grievance meetings are scheduled on an as-needed basis.

**Aggrieved SIA Members File Complaints with SIA and then DOL**

64. Keith MacKinnon, a member in good standing of SIA at the time of the January 2024 Election, sent SIA a letter of intent to run for representative.

65. SIA, however, disqualified MacKinnon from running in the January 2024 election. SIA emailed MacKinnon on December 29, 2023, that he was disqualified for "disloyalty." SIA concluded largely without explanation that MacKinnon was disloyal for "recently and publicly [speaking] and act[ing] against SIA in regard to its continuing to be the representative of SkyWest's Flight Attendants," and speaking and acting "in favor of a different organization to ostensibly replace SIA."

66. SIA did not give MacKinnon written notice of the disloyalty charge, any chance to prepare a defense, nor a hearing to contest the charges before disqualifying MacKinnon.

67. Amy Hurst, another member, submitted a letter of intent to run for representative in the January 2024 election.

68. By email dated December 29, 2023, SIA disqualified Hurst for disloyalty. SIA gave Hurst the exact same explanation for disqualification as it did MacKinnon.

69. SIA did not give Hurst prior written notice of the charges, a chance to prepare a defense, nor a hearing to contest the charges.

70. The results of the January 2024 Election were as follows:

11

| Office | Candidate (winner in bold) | Votes | Margin |
|---|---|---|---|
| Representative (2) | **Don Spurgeon** | **448** | |
| | **Stacey Quinn** | **305** | |
| | Tish Poulson | 285 | 20 |
| | Max Harker | 144 | |
| | Sean Hill | 77 | |

71. Alexis Reusser-Lenhart, an SIA member in good standing, filed three complaints with SIA challenging the January 2024 election, and the elections for other officers.

72. Reusser-Lenhart filed her first election challenge with SIA on December 14, 2023. This first challenge protested SIA's "[f]ailure to follow SIA's bylaws and hold an election for SIA Executive Council Elections at least every 3 years" and "[c]hanging the expiration dates of terms for representatives."

73. Reusser-Lenhart filed a second election challenge with SIA two days later. This challenge protested the lack of transparency and breaking of current SIA bylaws with the August 2023 election. Ruesser-Lenhart described her complaint this way: "[t]he election for President was never held to the terms provided under the LMRDA and a new election must take place for all representatives that allows for the general members to properly nominate, put in letters of intent and elect the candidate of their choice for all positions."

74. Reusser-Lenhart requested SIA void the election and hold a new one.

75. Just after the polls closed on the January 2024 election, Reusser-Lenhart filed a third election challenge with SIA. This challenge protested SIA's "[f]ailure to send each voter an

election notice 15 days prior to election[;]" "Biased Candidate Selection[;]" and "[r]efusal of candidate applications based on personal bias rather than qualifications[.]"

76.     By email on January 16, 2024, SIA President Brent Coates rejected Reusser-Lenhart's protests and stated that SIA "consider[ed] this matter closed."

77.     Reusser-Lenhart filed a protest with DOL on February 7, 2024, which incorporated the three election challenges she sent SIA.

78.     Another SIA member, Anna Miroslawska, protested the January 2024 election and disqualification of candidates by email to SIA on January 16, 2024—5 days after the elections closed.

79.     By email on February 1, 2024, Coates rejected Miroslawska's protest because "the election was certified and confirmed by second and third-party administrators in accordance with SIA bylaws, [so] the results have been accepted and the election is considered closed."

80.     Miroslawska filed a protest with DOL on February 3, 2024, which stated, "I believe we did not have . . . sufficient knowledge of . . . why some potential candidates were turned away from being on the ballot by SIA."

81.     DOL investigated the Miroslawska and Reusser-Lenhart complaints and found probable cause to believe that: (1) violations of 29 U.S.C. §§ 481–83 had occurred in the conduct of SIA's elections for officers; and (2) such violations may have affected the outcome of the elections and have not been remedied.

82.     DOL has notified SIA of these findings and has given it an opportunity to respond.

13

83. SIA has agreed to extend the time within which the Secretary may bring suit with respect to Miroslawska's and Reusser-Lenhart's complaints to DOL until July 12, 2024, through a series of signed waivers.

### FIRST CAUSE OF ACTION
*Failure to hold elections every three years*

84. The Secretary repeats and incorporates all previous paragraphs.

85. 29 U.S.C. § 481(b) requires "[e]very local labor organization [to] elect its officers not less often than once every three years by secret ballot among the members in good standing."

86. SIA violated 29 U.S.C. § 481(b) when it elected representatives to terms of four years or longer.

87. SIA violated 29 U.S.C. § 481(b), when it 1) failed to elect the executive officers at least once every three years, and instead followed an ad-hoc election schedule; and 2) failed to directly elect executive officers by secret ballot among its members, and instead required candidates to first win a quasi-primary election among incumbent representatives.

88. Alternatively, 29 U.S.C. § 481(f) (pertaining to national labor organizations) states that, "[w]hen officers are chosen by a convention of delegates elected by secret ballot, the convention shall be conducted in accordance with the constitution and bylaws of the labor organization insofar as they are not inconsistent with the provisions of this subchapter."

89. Even if SIA is a national labor organization, it violated 29 U.S.C. § 481(f) when it failed to elect the executive officers at least once every three years as required by SIA's Bylaws.

### SECOND CAUSE OF ACTION
*Inadequate safeguards*

90. The Secretary repeats and incorporates all previous paragraphs.

91. 29 U.S.C. § 481(c) requires "[a]dequate safeguards to insure a fair election shall be provided[.]"

92. SIA violated 29 U.S.C. § 481(c), when it disqualified Keith MacKinnon and Amy Hurst from running in the January 2024 Election for breaching a duty of loyalty without first giving MacKinnon and Hurst 1) written specific charges; 2) a reasonable time to prepare a defense; and 3) a hearing in connection with restricting MacKinnon's and Hurst's ability to run for office, as required by 29 U.S.C. § 411(a)(5).

### THIRD CAUSE OF ACTION
*Nomination of Candidates & Failure to Follow Bylaws*

93. The Secretary repeats and incorporates all previous paragraphs.

94. 29 U.S.C. § 481(e) specifies direct membership voting for candidates, describes who may be a candidate for office, and provides detailed procedures for holding those elections:

> In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address . . . The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter.

95. SIA violated 29 U.S.C. § 481(e) when it 1) only allowed incumbent representatives to nominate executive officers; 2) only allowed incumbent representatives to run for executive offices; and 3) required candidates for executive offices to first win a quasi-primary election among the incumbent representatives before allowing the membership to vote.

96. SIA violated 29 U.S.C. § 481(e) when it also failed to follow its bylaws, which require its president, vice-president, and secretary to be elected at least once every three years instead of on an ad-hoc election schedule which resulted in terms of office greater than three years.

### FOURTH CAUSE OF ACTION
*Improper Disqualification of Candidates*

97. The Secretary repeats and incorporates all previous paragraphs.

98. SIA violated 29 U.S.C. § 481(e) when it disqualified Keith MacKinnon and Amy Hurst from running in the January 2024 Election for breaching a duty of loyalty when (1) SIA failed to include the loyalty pledge qualification as a candidate eligibility requirement in SIA's bylaws in force at the time of candidate eligibility determinations, and failed to notify members that a loyalty pledge was a candidate eligibility requirement; and (2) SIA failed to give MacKinnon and Hurst (a) written specific charges; (b) a reasonable time to prepare a defense; and (c) a hearing in connection with restricting MacKinnon's and Hurst's ability to run for office, as required by 29 U.S.C. § 411(a)(5).

### FIFTH CAUSE OF ACTION
*Inadequate Election Notice*

99. The Secretary repeats and incorporates all previous paragraphs.

100. SIA violated 29 U.S.C. § 481(e) when it failed to mail an election notice to the last known home address of each member at least 15 days prior to the January 2024 Election.

101. Violations of 29 U.S.C. §§ 481(b), (c), (e), and (f) may have affected the outcome of 1) the January 2024 Election for two representatives; 2) SIA's last regularly held elections for

executive officers; and 3) the election for any representative whose term of office has exceeded three years.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter an Order and Judgment in favor of the Secretary and against SIA as follows:

(a) declaring the following elections of SIA to be void: 1) the January 2024 Election; 2) SIA's last regularly held elections for executive officers; and 3) the election for any representative whose term of office has exceeded three years;

(b) directing SIA to conduct new elections for these offices, including nominations, under the supervision of DOL;

(c) for the costs of this action;

(d) injunctive relief to enjoin violations; and

(e) for such other relief as may be appropriate.

Dated this 1st day of August, 2024.

        TRINA A. HIGGINS
        United States Attorney
        */s/ Joel A. Ferre*
        JOEL A. FERRE
        Assistant United States Attorney

OF COUNSEL:

SEEMA NANDA, Solicitor of Labor
BEVERLY DANKOWITZ, Associate Solicitor
JEFFREY LUPARDO, Counsel for Labor-Management Enforcement
KEVIN KOLL, Attorney, U.S. Department of Labor
TRACY WOLF, Attorney, U.S. Department of Labor