Erik A. Christiansen (7372)
Christina M. Jepson (7301)
Sarah Jenkins Dewey (15640)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
cjepson@parsonsbehle.com
sdewey@parsonsbehle.com
ecf@parsonsbehle.com

Gregg M. Formella (admitted pro hac vice)
**GREGG M. FORMELLA JD**
300 State St.
P.O. Box 92141
Southlake, TX 76092
gregg.formella@gmail.com

*Attorneys for Defendant SkyWest Inflight Association*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST INFLIGHT ASSOCIATION,<br><br>Defendant. | **AMENDED COUNTERCLAIM**<br><br>Case No. 2:24-cv-00492<br><br>The Honorable Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

| | |
|---|---|
| SKYWEST INFLIGHT ASSOCIATION,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, and the UNITED STATES DEPARTMENT OF LABOR,<br><br>Counterclaim Defendants. | |

Counterclaim Plaintiff SKYWEST INFLIGHT ASSOCIATION ("SIA") bring this Amended Counterclaim against Counterclaim Defendants JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, and UNITED STATES DEPARTMENT OF LABOR ("DOL"), pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and the Court's Order Granting Stipulated Motion to Extend Deadlines (Dkt. 38):

**PARTIES**

1. Under the Railway Labor Act ("RLA"), 45 U.S.C. 151, et seq., SIA is a nation-wide labor organization operating as the exclusive labor representative of the approximately 4,300 Flight Attendants employed by SkyWest around the country. Additionally, SIA is a national labor organization under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"). See 29 U.S.C. § 401-531. SIA is based in Utah.

2. Julie A. Su is Acting Secretary of the United States Department of Labor, a U.S. Government Executive Branch agency within the meaning of 5 U.S.C. § 552(f)(1), located in Washington, D.C.

3. The United States Department of Labor is a U.S. Government Executive Branch agency within the meaning of 5 U.S.C. § 552(f)(1), located in Washington, D.C.

**JURISDICTION AND VENUE**

4. This Court has both subject matter jurisdiction over this action and personal jurisdiction over DOL pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 1345, and 1361.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e), and 5 U.S.C. § 552(a)(4)(B).

**FACTUAL ALLEGATIONS**

**General**

6. SIA represents and is comprised of all SkyWest Flight Attendants currently on the seniority list who have successfully completed their FAA-required operating experience and who are therefore a member of the Flight Attendant "Craft or Class."

7. For several decades, SIA has been the exclusive labor representative for the Flight Attendants under the RLA, negotiating on their behalf with SkyWest for terms and conditions of employment including wages, hours, and benefits, etc. In addition, in December 2023, SIA was informed by the DOL that the agency had determined SIA is a labor organization under the LMRDA.

8. SIA and SkyWest are parties to a collective bargaining agreement that applies to the entire complement of SkyWest's 4,100 flight attendants.

**"National" and "Local" Labor Organizations Under The LMRDA**
**(DOL's Erroneous Categorization of SIA as a "National" Organization)**

9. DOL's lawsuit is premised on its assertion that SIA—despite the fact that it identifies as a "national" labor organization—must regard itself as, and operate as, a "local"



4920-1697-9216.v1

organization under the LMRDA. Building upon that assertion, which is erroneous, DOL demands that SIA be subject to certain provisions and requirements of the LMRDA that "national" labor organizations are not subject to, which SIA should not be made subject to, and which, for reasons of SIA's legitimate institutional interests, it should not be subject to.

10. DOL's insistence that SIA be categorized a "local" labor organization is not only erroneous – it is unlawful under the RLA, the LMRDA, and other authority including the US Constitution. Moreover, it is harmful to SIA from a practical standpoint. SIA will continue to be harmed by DOL unless (a) SIA is declared a "national" labor organization under the LMRDA and (b) DOL is enjoined from violating the applicable law and SIA's rights.

11. The LMRDA, as interpreted and administered by DOL, recognizes that it is appropriate for the agency, in determining a labor organization's category, to take into account the organization's own express position regarding its category. However, on information and belief, DOL in this matter failed and refused to take into account SIA's express position that it is a "national" labor organization. DOL's failure to take into account SIA's own express position that it is a "national" labor organization violated rights of SIA, was unlawful, and was harmful to SIA.

12. During the months earlier this year when DOL's investigation was underway, the agency articulated to SIA varying and sometimes inconsistent criteria to be used in determining a labor organization's proper category. SIA, with reference to the successive sets of criteria articulated by DOL, repeatedly showed that SIA is a national labor organization. DOL responded by once again moving the goalposts further away.

13. On information and belief, DOL now bases its assertion that SIA is a "national" labor organization solely on certain portions of the LMRDA and DOL's interpretation of it.

However, the LMRDA is neither the first nor the primary federal law regarding labor organizations that is central to the issues before the Court.

14. In 1926 (some 33 years before the LMRDA came about), Congress enacted the RLA to govern labor relations in the railroad industry—and in 1936 (23 years before the LMRDA came about), Congress extended the RLA to the airline industry.

15. An express purpose of the RLA is to promote the uninterrupted flow of commerce across the country through peaceful*, nation-wide* labor relations so as to prevent what otherwise could be a hodge-podge of random and unpredictable labor disruptions around the country that would harmfully ripple across the national transportation system at any given time.

16. This purpose is to be fulfilled through an RLA requirement whereby, at every railroad and airline in the country, all of the employees of a given employer (or "carrier") who are part of particular work group ("craft or class") and who are represented by a labor organization are so represented on a national basis by that single organization – regardless of, among other things, the number of those employees, the size of the carrier's transportation system, the locations where particular members of the craft or class are based or live, and the various places across the country where they might perform their work on any given day.

17. For a labor organization under the RLA, including SIA, such nation-wide representation of the entire craft or class is not only a duty and a right but also a fundamental purpose in keeping with the purposes of the RLA itself.

18. For over 30 years running, SIA has exclusively represented the craft or class of all Flight Attendants employed by SkyWest Airlines, Inc. ("SkyWest"), appropriately carrying out functions and purposes of a "national" labor organization.

19. The craft or class is currently comprised of approximately 4,300 Flight Attendants based in 20 cities across the country and flying into 240 US airports, 45 US states, and multiple cities within two foreign countries (Canada and Mexico).

20. The LMRDA, in keeping with the fact it is decades junior to the RLA, defers to the RLA in significant respects and explicitly states that "[n]othing contained in this chapter… shall be construed to supersede or impair or otherwise affect the provisions of the [RLA], or any of the…rights, benefits, privileges, or immunities of any …organization, representative, or person subject thereto." 29 USC § 523. As reflected below, DOL has failed to comply with this and has unlawfully ignored the LMRDA's express deference to the RLA.

21. While SIA occasionally carries out functions that DOL regards as typical of a "local" labor organization, it also carries out numerous functions—and it has various purposes—that are typical of "national" organizations. Such functions have long been incorporated in SIA's Constitution & Bylaws by reference, and many are now stated there explicitly. DOL has failed to appropriately take into account SIA's national functions and purposes.

22. To the extent DOL claims to apply a "functions and purposes" test for determining a labor organization's category, DOL has largely ignored the "purposes" part of the test, including with respect to SIA's national purposes as a labor represented governed by the RLA.

23. In contrast to DOL's insistence that SIA be categorized as a "local" labor organization, the agency has long accepted that there are numerous labor organizations that—although they are similarly situated to SIA in fundamental and significant ways—are national labor organizations under the LMRDA.

24. These numerous organizations are similarly situated to SIA in regards such as these: (a) on information and belief, and also based the contents of certain records that are publicly accessible via DOL's website, each regards itself as a "national" labor organization; (b) each is a unitary organization (i.e., having no parent organization, no "local" or subsidiary organizations, and no other kind of organizational affiliate); (c) each is dedicated to representing all the members of a given workgroup of a single employer, regardless of where the members-employees are based or perform their work; (d) the employer (typically, an airline or a professional sports organization) operates in numerous locations around the country or even nation-wide; (e) the workgroup itself has members that are based in many of those same locations; (f) during any given period (e.g., a given week or month), most if not all of the members of the workgroup perform their work in multiple locations around the country; (g) in many cases, such organizations are (like SIA), covered by the RLA (which essentially requires labor organizations representing workgroups in the airline and railroad industries to do so on a national basis); and (h) in many, if not all, cases, the entire national workgroup is covered by a single collective bargaining agreement negotiated for them by the organization.

25. Given that each of the above-referenced, similarly situated organizations is a unitary entity, it would be disingenuous for any of them to be characterized as "the" labor organization that is "closest" to its members—precisely because such a characterization would be based on the false premise that there is some other organization(s), somehow affiliated with it, that also has some sort of role in representing the same workgroup. Nevertheless, DOL has inexplicably mischaracterized SIA in exactly this way—calling SIA "the" labor organization "closest to its

members." It would be equally "logical"—but no less erroneous—for DOL to instead characterize SIA as "furthest" from its members.

26. On information and belief, despite the fact that the unitary labor organizations referenced above are similarly situated to SIA in numerous fundamental and significant ways, at all pertinent times: (a) DOL never categorized any of them as "local" labor organizations; and (b) DOL never asserted that any of them is "the" labor organization "closest to its members."

27. During DOL's administrative investigation, SIA reminded DOL of many of the numerous, above-referenced organizations that are similarly situated to SIA, but that DOL has long regarded as "national" labor organizations. DOL never provided any explanation as to why it recognizes them as "national" organizations but insists on categorizing SIA as a "local" labor organization.

28. During DOL's administrative investigation, SIA reminded DOL that: (a) one of the above-referenced organizations that is similarly situated to SIA but that DOL recognizes as a "national" organization under the LMRDA is the Association of Professional Flight Attendants ("APFA"), which is the exclusive labor representative for all US-based Flight Attendants employed by American Airlines; (b) several years ago, DOL filed a lawsuit against APFA alleging that the organization had failed to comply with certain provisions of the LMRDA relating to the conduct of internal elections; (c) at all pertinent times, APFA and SIA were "similarly situated" to each other (as that term is used above); (d) at all pertinent times, APFA was a "national" labor organization; and (e) DOL's lawsuit asserted that APFA had violated certain LMRDA provisions or requirements applicable to "national" labor organization; and (f) DOL's lawsuit effectively acknowledged and accepted that APFA is appropriately categorized as a "national" labor

organization under the LMRDA (see *Perez [Acosta] v. APFA*, Civil Action No. 4:16-vc-1057-A (N.D.Tex.)); and (g), to this day, APFA remains a "national" organization.

29. Furthermore, SIA expressed to DOL SIA's concern that, by accepting APFA as a "national" organization but not accepting SIA as a "national" labor organization, DOL was acting against SIA in an apparently arbitrary, capricious and discriminatory manner. DOL did not respond.

30. DOL's categorization of SIA as a "local" labor organization is erroneous and unlawful in itself. Moreover, in the context of the above-referenced "national" labor organizations that are similarly situated to SIA, DOL has singled out SIA for different and novel treatment. It has acted arbitrarily, capriciously, and unlawfully.

**<u>SIA's Requests under FOIA for Records in DOL's Possession, Custody or Control</u>**

31. FOIA was enacted to enable the public to examine government records as defined in 5 U.S.C. §552(f)(2). It "requires the government to disclose, upon request, broad classes of documents identified in 5 U.S.C. §552(a)," unless the documents are exempted from disclosure under 5 U.S.C. §552(b). *Prison Legal News v Samuels*, 787 F.3d 1142, 1146 (DC Cir. 2015); *see also Trentadue v. Integrity Committee*, 501 F.3d 1215, 1225–26 (10th Cir. 2007).

32. Yet, there are questions about DOL's actions, criteria, purposes and motivations in regard to its categorizations, under the LMRDA, of certain labor organizations as "national" and others as "local" or in some other category. Additionally, there are questions regarding DOL's administrative investigations, actions and inactions in connection with the original complaints filed with the agency by certain SIA Members which are DOL's putative basis for its claims against SIA.

33. To ensure transparency, the Government must be open about DOL's actions, criteria, purposes and motivations in regard to the categorization of labor organizations under the LMRDA—including, specifically, in its recent categorization of SIA as a "national" labor organization—and in regard to DOL's administrative actions, inactions, and investigation underlying its claims against SIA.

34. Importantly, that includes sufficient information to assure SIA that DOL's actions, criteria, purposes and motivations in regard to the categorization of labor organizations—including its asserted categorization of SIA, which began earlier this year—comply with applicable laws both substantively and procedurally. It also includes sufficient information to assure SIA if DOL acted lawfully and appropriately in regard to accepting, and in its other actions and inactions in relation to, the complaints of SIA members on which its investigation purportedly were premised. Among many other such records to which SIA is entitled are those very complaints—records which DOL, despite numerous requests by SIA since the start of DOL's investigation of those complaints, has refused to provide SIA. Instead, DOL has simply provided SIA with DOL interpretations and high-level characterizations of the content of the complaints.

35. Under FOIA, any person may request and obtain records from a government agency, such as DOL, that has possession, custody or control of them. Specifically, FOIA requires that, upon proper request for disclosure of records, an agency "shall make the records promptly available to any person. 5.U.S.C. § 552(a)(3)(A).

36. FOIA makes clear what it means to "make the records promptly available to any person." Specifically, pursuant to 5 U.S.C. § 552(a)(6)(A)(i), an agency such as DOL must "determine within 20 [business] days . . . whether to comply with such request and shall

immediately notify the person making such request of such determination and the reasons therefor."

37. "In unusual circumstances . . . the time limits prescribed . . . may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B).

38. SIA submitted its two FOIA requests to DOL over six and four months ago, respectively. DOL, however, has yet to provide SIA with the vast majority of the records responsive to SIA's requests.

39. Moreover, although SIA has asked DOL for updates regarding the status of its FOIA requests, DOL has essentially stopped communicating with SIA about the matter. Rather, as to each of SIA's requests, DOL simply is posting on an agency webpage a very brief (two-word) "status" indication to the effect that DOL has yet to fulfill the request.

40. As of the date of the filing of these Counterclaims, the website indicates that the agency was to have fulfilled SIA's two requests several months ago, on June 3, 2024 and August 12, 2024, respectively.

41. By having failed to promptly provide SIA with all records responsive to its FOIA requests, and by failing to have otherwise acted appropriately with regard to SIA's FOIA requests, DOL has violated its statutory duties under FOIA. Additionally, DOL's ongoing failure to provide the records further violates FOIA.

42. An agency's response to a FOIA request may not be to "simply decide to later decide" to properly fulfill the request. The agency must provide particularized assurance "of the

scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n ("CREW"), 711 F.3d 180, 186 (D.C. Cir. 2013).

43. When an agency fails to timely act with respect to a request properly before the agency, the requester has exhausted any administrative remedies with respect to the request. 5 U.S.C. § 552(a)(6)(C)(i); CREW, 711 F3d at 184.

**SIA's Two FOIA Requests to DOL**

44. SIA submitted two separate FOIA requests to DOL, each of which is a proper request that was properly submitted to the agency, as to each of which DOL has not promptly or appropriately provided SIA all responsive records.

45. DOL has legal possession, custody or control of the documents and information responsive to certain requests SIA, pursuant to FOIA, submitted to DOL for copies of such documents and information.

*The First Request*

46. SIA, through its counsel, submitted the first FOIA request on May 3, 2024, via email to FOIArequests@DOL.gov. The request focuses on records relating to other labor organizations that DOL recognizes as "national" labor organizations even though, as stated above, they are similarly situated to SIA.

47. In pertinent part, the request asked DOL to produce to SIA:

> 1. A listing of any and all election-related investigations initiated by OLMS under the LMRDA, at any time since January 1, 2000, concerning or regarding each of the following labor organizations indicated here by name and/or OLMS "File Number":

| Name of Labor Organization | (File Number) |
|---|---|

| | |
|---|---|
| Allied Pilots Association | (059-849) |
| Arena Football League Players Association | (544-834) |
| Association of Minor League Umpires | (541-712) |
| Association of Professional Flight Attendants | (509-620) |
| Florida West Pilots Association | (545-154) |
| Major League Baseball Players Association | (064-727) |
| Major League Soccer Players Assn. | (542-816) |
| National Association of Basketball Referees | (516-423) |
| National Football League Players Association | (065-533) |
| National Football League Referees Assn. | (540-186) |
| National Basketball Coaches Association | (530-340) |
| National Basketball Trainers Association | (530-313) |
| National Women's Soccer League Players Assn. | (000-429) |
| NBA Players Association | (068-015) |
| Netjets Association of Shared Aircraft Pilots | (543-939) |
| Professional Lacrosse Players | (537-270) |
| Professional Soccer Referees Association | (544-869) |
| US Airline Pilots Association | (543-770) |
| US Rugby Players Association | (000-417) |
| Southwest Airlines Pilots Association | (541-621) |
| Women's National Basketball Players Assn. | (541-447) |

2. With respect to your listing of any such election-related investigations, please include the following information with regard to each such investigation: (a) when it was opened; (b) when, if ever, it was concluded; (c) the alleged violations of the LMRDA that gave rise to the investigation; (d) the alleged violations of the LMRDA that were investigated; (e) what, if any, determination(s) was made by OLMS; (f) whether any lawsuit(s) involving OLMS or DOL as a party ensued from or arose in connection with the investigation; (g) if there was such a lawsuit(s), for each such lawsuit please provide the name of the case and/or the names of the parties, the name and location of the court(s), when the lawsuit was filed, and the ultimate outcome of the litigation; and (h) a complete

> copy of the contents of OLMS's investigative file to the full extent allowed by law.
>
> 3. Also with respect to your listing of any such election-related investigation as requested in paragraph "1," above (which, again, concerns only the above-referenced labor organization), as to each such investigation please indicate: (a) whatever OLMS's records indicate is the current "type" of the labor organization in terms of international, national, intermediate, or local; (b) whether, according to OLMS's records, the "type" has ever changed since the organization filed its first Form LM-1 (e.g., if the organization has changed from a "local" organization to a "national" organization and/or vice versa (as such or similar terms are used by Form LM-1); (c) in the event OLMS's records indicate any such change in "type," (i) what the change was, (ii) when it occurred, (iii) whether or not OLMS initiated it, requested it, required it, and/or decided upon it, (iv) whatever OLMS's records may indicate was the position(s) of the labor organization regarding such change in "type," and (v) whatever OLMS's records may indicate was the reason(s), motive(s), or purpose(s) for any such change.

48. On May 3, 2024, DOL acknowledged to SIA's counsel the agency's receipt of SIA's request and noted that it had assigned the request a "tracking number" of 2024-F-09080. SIA's filing date of May 3, 2024 meant that, under FOIA's 20 working-day deadline, DOL's deadline to appropriately respond to the substance of the request was to be June 3, 2024.

49. On May 6, 2024, DOL informed SIA's counsel that DOL considered SIA's request as having been filed on May 6, 2024 (three calendar days after the actual filing date), such that DOL's new deadline was to be June 4, 2024. That same day, SIA replied to DOL, questioning the appropriateness of the change, but, given that the change had the effect of pushing out DOL's deadline by merely one calendar day, SIA did not press the issue. Additionally, SIA took the opportunity to point out and correct what it realized had been a typo in SIA's request. (The typo and correction concerned the "File Number" for one of the labor organizations listed in SIA's request).

50. On May 7, 2024, DOL replied to SIA's counsel and (a) acknowledged the correction to the above-referenced File Number; (b) reiterated DOL's position that it would regard SIA's request as having been filed on May 6, 2024 (such that DOL's deadline to substantively respond to the request would be June 4, 2024); and (c) indicated that SIA expected to issue formal acknowledgement of SIA's request later on May 7, 2024. The formal acknowledgement was issued the next day, May 8, 2024.

51. On May 8, 2024, SIA's counsel emailed DOL to acknowledge that DOL's deadline to substantively respond to SIA's request would be June 4, 2024. SIA's counsel further inquired if (a) there was "any realistic scenario in which the responsive materials might be provided before the deadline?" and (b) if there "is any policy or practice at the agency whereby information responsive to requests generally is not provided until the deadline?"

52. On May 8, 2024, DOL replied, in pertinent part, as follows:

> For "simple" requests, we are able the [sic] gather the records and review for disclosure within proscribed [sic] time periods.
>
> For complex requests, like yours, we regularly provide interim releases of materials that have completed review for redactions and ready for release. We do not until the deadline to release all the records as a whole.
>
> I'm just now preparing OLMS' official acknowledgement which explains our process and plan.

53. Also on May 8, 2024, DOL emailed to SIA its previously promised formal acknowledgement of SIA's request . Dated May 8, 2024, the letter confirmed that DOL recognized the validity of SIA's request. It also stated that DOL would need more than the standard 20 working

days to respond to the request and might need up to 10 additional working days, for a total of 30 working days. It added:

> This office will respond to each portion of your request as soon as practicable and prior to **June 18, 2024**. Please be advised however, that your request is being handled as equitably as possible and that all materials that can be released will be made available at the earliest possible date. To that effect, we may provide interim releases. If you do not object in writing to the 30 workdays processing time, we will consider that you have agreed to OLMS's projected due date as indicated above…

(Emphasis in original.)

54. On June 5, 2024, SIA inquired of DOL as to whether, as its May 8, 2024 had suggested was possible, it now was able to provide interim released.

55. On June 6, 2024, a DOL official replied by email:

> **I am pushing to have an interim/partial release to you by next Wednesday.**
>
> I appreciate your continued patience.

(Emphasis added.)

56. One week later, on June 12, 2024, the DOL official informed SIA that DOL would not yet be providing any responsive records. The official added

> **We are working diligently to complete our review, and need additional time to complete. I hope to respond by Friday** [June 14, 2024].

(Emphasis added.)

57. As of June 17, 2024, DOL had yet to provide SIA with any records. Accordingly, SIA's counsel asked the DOL for an update. On June 21, 2024, the DOL official provided a seemingly-promising reply:

> **I've been assured that your request is a priority for final review today and will respond no later than Monday.**
>
> We appreciate your continued patience.

(Emphasis added).

58. However, just one hour later, the DOL again changed its story and again indicated that it needed more time:

> **I just been informed of another review level. I do not know, despite the priority, how long this will take. I understand any frustration you may experience.**
>
> We appreciate your continued patience.

(Emphasis added).

59. As of June 25, 2024, DOL had still not provided any substantive response to SIA. Accordingly, SIA's counsel again requested a status update and reserved all rights on behalf of SIA:

> Please let me know if you have any update, or if there is any way I can assist.
>
> For the avoidance of doubt, I hereby note that I reserve all rights and objections in regard to the way the process of responding to my [May 3, 3024] request is playing out—including, in particular, as to DOL/OLMS's prior and ongoing delays and failures to provide a substantive response. (I realize that you personally are not responsible for the situation.)

60. Three weeks passed without any reply from DOL. On July 14, 2024, SIA's counsel followed up with the DOL official:

> I hope this finds you well. What is the additional review level you mentioned in your [June 21, 2024] email?

61. Ten days later, on July 24, 2024, the DOL finally provided an *initial* substantive response. (SIA was unaware of the initial response until July 31, 2024, because it had been sent to

SIA's counsel via an automated email address and was routed to a spam filter.) DOL characterized the initial response as an "interim response."

62. In the interim response, DOL provided only a portion of the records within SIA's request. Specifically, DOL responded only to Items 1 and 2(a)-(d), by providing SIA an Excel spreadsheet that contained summarized information. It also provided certain information, again in the form of an Excel summary, related to aspects of Items 3(b) and 3(c)(i)-(v).

63. DOL's "interim response" also asserted that certain records requested by SIA were, or might be, publicly accessible. This referred to Items 3(a), 3(b) and 3(c)(i)-(v) of SIA's request.

64. As to Items 2(e)-(g) of SIA's request, DOL's letter asserted that it "does not separately track this information but this information could be derived from materials within the investigative files you seek as Item 2(h) of your request." As to Item 2(h), however, DOL stated:

> **[DOL] requires additional time to respond to Part 2(h)**…*[which] will exceed 60 days.*

(Bold emphasis in original; italicized emphasis added.)

65. Later in its letter, DOL stated that it "recommends [SIA] consider reducing the scope of your Part 2(h) request;" and DOL also suggested that SIA should consider "withdrawing it" altogether. DOL's letter indicated that the agency might need up to three hours to locate the records requested by SIA – for which time DOL would charge SIA $120.

66. On August 2, 2024 (a mere three days after SIA's counsel found DOL's July 31, 2024 in his email's spam filter), SIA informed DOL that it would neither reduce the scope of, nor withdraw, its request; SIA added that it had previously stated, in writing, that it would be willing to pay at least $200 in DOL fees. SIA also took the opportunity to express its concern that the DOL's continuing and ever-extending delays in providing the information requested by SIA did

not suggest good faith on the part of DOL and was unlawful conduct under FOIA. SIA asked DOL to keep SIA updated.

67. As of August 26, 2024, SIA had not received from DOL any acknowledgment of SIA's August 2, 2024 communication. Accordingly, SIA's counsel once again emailed DOL:

> I hope this email finds you well.
>
> This is to respectfully request from you a status update regarding the Agency's gathering of the outstanding documents/information responsive to this FOIA request. Would you please let me know where things stand? And can the outstanding documents/information please now be provided?
>
> Also, to whatever extent it may be the case that some but [not] all of the outstanding documents/information can be provided at this point, would you please see to it that that portion is provided now (and the rest can be provided, in whole or in part, as soon as it becomes available)?
>
> Please let me know your guidance and if there is any option I have to pursue or appeal for any sort of "expedited" completion of the FOIA request at this time.

68. On August 29, 2024, DOL responded in the form of an email to SIA's counsel that included the following statement:

> **We are continuing to process your FOIA request and apologize for any misunderstandings or inaccuracies in the processing time frame that we provided to you.**

(Emphasis added.)

69. As of October 16, 2024, SIA had yet to hear anything further from DOL, much less receive the outstanding records and information. Accordingly, SIA's counsel, in a phone call with counsel for DOL, informed him that, in light of the ongoing failure of DOL to provide the requested records and information, SIA intended to include with its response to the above-captioned lawsuit a counterclaim against DOL for violation of FOIA based on DOL having failed

to timely provide, and is continuing to fail to provide, SIA with the outstanding documents in DOL's custody, possession and control that are response to SIA's above-referenced FOIA request.

70. As of the date of the filing of this Counterclaim, SIA has yet to be provided the outstanding records and information -- which DOL is able to provide to SIA and to which SIA is entitled. Moreover, SIA has heard nothing further from DOL about the status of the agency's fulfillment of SIA's request.

71. Nor has DOL ever provided any explanation for the above-described succession of rolling delay and postponements that have taken place—and that continue to exist and frustrate fulfillment of SIA's request.

*The Second Request*

72. On July 12, 2024, SIA, through its counsel, submitted to DOL (via email to FOIARequests@DOL.com) a FOIA request for documents relating to, among other things:

> DOL's [] investigation of the Association of Professional Flight Attendants ("APFA") in regard to APFA's election in January 2016, as referenced in *Perez [Acosta] v. APFA*, Civil Action No. 4:16-vc-1057-A (N.D.Tex.).

73. On July 15, 2024, DOL acknowledged the request, by means of an email to SIA's counsel that included the following statement:

> This is to inform you that [DOL] received your request, tracking number 2024-F-12152, on July 15, 2024 for a disclosure determination. We will contact you again to provide additional information and provide a status of your request.

74. However, contrary to DOL's assertion that it would contact SIA again about SIA's request, at no point has DOL done so.

75. On August 26, 2024, SIA's counsel followed up with DOL, in pertinent part stating:

> I see that the [DOL's] tracking web page [for FOIA requests] showing this request as having an "expected delivery date" of August 12, 2024. I do not believe I have received yet any substantive response to this request, but please let me know if I might be overlooking something. Alternatively, please let me know if there is a date by which the Agency now expects to provide its substantive response in whole or in part.

76. SIA never received a response to its counsel's August 26, 2024 question to DOL. Nor has SIA ever provided the record covered by the FOIA request. Nor has DOL ever provided SIA with any explanation for these things.

77. On October 16, 2024, SIA's counsel, in a phone call with counsel for DOL, informed him that, in light of the ongoing failure of DOL to provide the requested records and information, SIA intended to include with its response to the above-captioned lawsuit a counterclaim against DOL for violation of FOIA based on DOL having failed to timely provide, and is continuing to fail to provide, SIA with the outstanding documents in DOL's custody, possession and control that are response to SIA's above-referenced FOIA request.

78. As of the date of the filing of this Counterclaim, SIA has yet to be provided the outstanding records and information corresponding to its above-referenced FOIA request to DOL. This is the case even though (a) DOL is able to provide the records and information to SIA, (b) SIA is entitled to receive the records and information from DOL and (c), DOL has violated, and is continuing to violate, FOIA by not timely providing (and not providing at all) the records and information properly requested by and owing to SIA.

79. Nor has DOL ever provided any explanation for the above-described succession of rolling delay and postponements that have taken place—and that continue to exist and frustrate fulfillment of SIA's request.

80. As of the date of the filing of this Counterclaim, SIA has yet to be provided the outstanding records and information—which DOL is able to provide to SIA. and to which SIA is entitled. Moreover, SIA has heard nothing further from DOL about the status of the agency's fulfillment of SIA's request.

*Statement of Harm*

81. DOL's failure, which continues unabated, to timely provide to SIA all of the information SIA has properly requested of DOL via its FOIA requests reference above, has caused significant and ongoing harm to SIA.

82. As but one example, the records and information SIA has properly requested in the above referenced FOIA requests regarding APFA are likely to be instructive to important issues in connection with claims that DOL asserts against SIA in the above-captioned lawsuit – e.g., the issue of whether DOL is treating SIA in an arbitrary, capricious and discriminatory manner by demanding that SIA categorize itself as a "local" labor organization even though it has permitted the likes of APFA (which, at some or all pertinent times, has been similarly situated to SIA for purposes of the factors that define the "national v local" question) to categorize itself as a "national" labor organization.

**FIRST CAUSE OF ACTION**
**SIA as a National Labor Organization under the LMRDA**
**(Declaratory and Injunctive Relief under 28 U.S.C. §§ 2201–2202)**

83. SIA incorporates by reference all other paragraphs of this Counterclaim.

84. DOL divides labor organizations into two categories: national and local. *See* 29 C.F.R. § 452.11.

85. The Labor-Management Reporting and Disclosure Act ("LMRDA") uses, but does not define, the terms "national" labor organization and "local" labor organization.

86. Whether a labor organization is "national" or "local" determines which provisions of the LMRDA apply to the organization.

87. Under the LMRDA, "[t]he characterization of a particular organizational unit as 'local,' 'intermediate,' etc., is determined by its functions and purposes rather than the formal title by which it is known or how it classifies itself." 29 C.F.R. § 452.11.

88. SIA is a national labor organization under the LMRDA, and it operates on a nationwide basis under the RLA. DOL, while it appears to acknowledge that SIA operates nationally, alleges that SIA is a "local" labor organization under the LMRDA. Thus, an actual controversy has arisen and now exists between SIA and the DOL concerning SIA's status as a national or local labor organization.

89. SIA seeks a judicial determination of its status as a national organization. Such a determination is necessary and appropriate at this time under the circumstances in order for the parties to determine which sections of apply to SIA.

90. SIA seeks a declaration and order from the Court that SIA operates as and is, under the RLA, a national labor organization.

**SECOND CAUSE OF ACTION**
**Unlawful Failure to Have Timely-Provided—and Unlawful Ongoing Failure to Provide—Records under the Freedom of Information Act**
**(Declaratory and Injunctive Relief under 28 U.S.C. §§ 2201–2202)**

91. SIA incorporates by reference all other paragraphs of this Counterclaim.

92. Under 5 USC §552(a)(6), an agency violates FOIA by failing to respond to a request within the statutory deadline—i.e., 20 working days, with a potential extension in "unusual circumstances" for no more than additional working days with notice to the requested.

93. Additionally, under 5 U.S.C. § 552(a)(3)(A), agencies must, upon receipt of a request, identify responsive, non-exempt records and "make the records promptly available to the requester." As to each of SIA's two requests, DOL has violated, and continues to violate, such provisions.

94. SIA properly requested that DOL produce to SIA the documents described in its FOIA requests, which are DOL's records subject to production under FOIA.

95. DOL possesses the records requested by SIA. On information and belief, none of the records are subject to any exemption based upon which DOL could lawfully refuse to produce them – and DOL has not asserted any of the records are subject to any such exemption. Nor has DOL provided any reasonable "justification" for not having timely produced, and for not yet producing, requested records.

96. DOL has no legal basis for having failed to timely to provide, and for continuing to fail to produce, all records responsive to SIA's requests—and DOL's failures in these regards violate FOIA, including 5 U.S.C. §§ 552(a)(3)(A) and 552(a)(6)(A)(1).

97. SIA has exhausted any applicable administrative remedies and is entitled to seek immediate judicial intervention. 5 U.S.C. § 552(a)(6)(C).

98. DOL has possession, custody and control of, and/or has a right to obtain, the documents requested by SIA.

99. The records are not exempt from disclosure under any paragraph of 5 U.S.C. §552(b), and DOL has asserted no such exemptions.

100. As to each of SIA's two requests, DOL has violated and is continuing to violate. its statutory duties to promptly provide to SIA—and it has violated and is continuing to violate SIA's statutory right to promptly receive—the documents requested by SIA within the time frame required by FOIA.

101. SIA is harmed by DOL's violations of FOIA and DOL's unlawful failure to timely provide, and unlawful ongoing holding of, records to which SIA is entitled. SIA will continue to be harmed unless DOL is compelled to comply with FOIA and produce the requested records forthwith.

102. SIA requests the Court enjoin the DOL from withholding DOL records and order the immediate production of all DOL records responsive to SIA's requests.

**THIRD CAUSE OF ACTION**
**Counterclaim Defendants Su and DOL Exceeded Statutory Authority by Treating SIA as a Local Labor Organization**
**(5 U.S.C. § 706)**

103. SIA incorporates by reference all other paragraphs of this Counterclaim.

104. Under the Administrative Procedures Act ("APA"), a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or is "in excess of statutory . . . authority or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

105. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

106. The LMRDA dictates the frequency and method of a labor organization's internal elections based on whether the labor organization is a "national" labor organization or a "local" labor organization. 29 U.S.C. § 481(a), (b).

107. The LMRDA does not define the terms "national" or "local" as they are used in the LMRDA or as they apply to labor organizations.

108. The DOL issued a regulation which provides that the "characterization of a particular organizational unit as . . . 'local,' 'intermediate,' . . . [or 'national], is determined by its functions and purposes rather than the formal title by which it is known or how it classifies itself." 29 C.F.R. § 452.11.

109. The DOL claims its characterization of SIA as a "local" labor organization is based on its regulation found at 29 C.F.R. § 452.11. However, the DOL has failed to apply the regulation appropriately and has effectively ignored certain pertinent and material terms.

110. Over the course of its underlying administrative investigation, DOL asserted a series of evolving and different bases for its characterization of SIA as a "local" labor organization, inconsistently applying 29 C.F.R. § 452.11. None of these bases referenced certain significant provisions of the LMRDA, the DOL's regulations and guidance, or the Railway Labor Act. The DOL avoided engaging with SIA in any meaningful discussion of the merits of SIA's position that it is a "national" labor organization.

111. The DOL's definitions of "national" and "local" exceed the DOL's statutory authority because the LMRDA does not clearly authorize the DOL to define these terms.

112. Section 481 of the LMRDA, which uses the terms "national" and "local," violates the non-delegation doctrine under Article I of the U.S. Constitution. The LMRDA gives the DOL

broad authority to define "national" and "local" as they are applied to labor organizations without providing any specific criteria or meaningful constraints on how such definitions should be determined or applied, effectively allowing the DOL to create new laws without proper congressional direction, thus exceeding the scope of permissible delegation of legislative power.

113. The DOL has inconsistently applied its regulatory characterization of "national" and "local" to labor organizations, and in so doing the DOL has treated SIA unreasonably, arbitrarily and capriciously. In contrast, the DOL acknowledges and treats as "national" labor organizations numerous labor organizations to which SIA is similarly situated (*e.g.,* each is a unitary entity, having no parent organization, no affiliate, and no subordinate organization; each represents a nationwide workgroup of a single employer; each carries out not only what the DOL now says are "local" functions but also what the DOL accepts as "national" functions).

114. The DOL has concluded that SIA is a local labor organization.

115. The DOL's position that SIA is a local labor organization under the LMRDA would require SIA to hold elections every three years and to conduct elections using a method and procedures not required of a national labor organization—all of which is at odds with SIA's bylaws and otherwise injures SIA and violates its rights, including but not limited to rights under the LMRDA and the Railway Labor Act

116. SIA requests that the Court find Su and the DOL's actions unlawful, set aside the DOL's findings that SIA is a local labor organization, and declare that SIA is a national labor organization.

**<u>FOURTH CAUSE OF ACTION</u>**
**The LMRDA Violates the Non-Delegation Doctrine**
**(U.S. Const. Art. I)**

117. SIA incorporates by reference all other paragraphs of this Counterclaim.

118. The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const., Art. I, § 1. The integrity and maintenance of the system of government ordained by the Constitution" mandate that Congress generally cannot delegate its legislative power to another Branch.

119. Section 481 of the LMRDA, which uses the terms "national" labor organization and "local" labor organization, violates the Non-Delegation Doctrine stated in Article I of the Constitution. The LMRDA gives Su and the DOL broad authority to define such terms "and fails to provide any specific criteria or meaningful constraints on how such definitions should be determined or applied, effectively allowing the DOL to create new laws without proper congressional direction, thus exceeding the scope of permissible delegation of legislative power.

120. In its administrative investigation of SIA that underlies Acting Secretary Su's lawsuit, it has used its improperly excessive power to inappropriately determine that SIA should be a "local" labor organization.

121. The DOL's inconsistent, unreasonable, arbitrary and capricious administration of the LMRDA and application of the agency's regulations have injured SIA and continue to cause injury.

122. The DOL has erroneously characterized SIA as a local labor organization, while leaving SIA essentially without recourse within the administrative process.

123. The Court should find section 481 of the LMRDA violates Article I of the U.S. Constitution and that the DOL's characterization of SIA as a "local" labor organization is likewise unconstitutional.

**PRAYER FOR RELIEF**

1. SIA prays that this Court: On the First Cause of Action as set forth above, declare that SIA is a "national" labor organization under the LMRDA and enjoin DOL from categorizing and treating SIA as anything other than a "national" labor organization under the LMRDA;

2. On the Second Cause of Action: (a) declare unlawful (i) DOL's failure to have promptly provided to SIA all records responsive to SIA's FOIA requests and (ii) DOL's ongoing failure to provide all such records; (b) order DOL to immediately produce to SIA all records responsive to SIA's requests; and (c) order DOL, under 5. U.S.C. § 552(a)(4)(E), to directly reimburse SIA's attorneys for their costs incurred and for the reasonable value of the time and efforts they have invested in prosecuting the Second Cause of Action;

3. On the Third Cause of Action, hold DOL and Su's actions unlawful under the APA, set aside the DOL's determination that SIA is a local labor organization, and declare that SIA is a national labor organization;

4. On the Fourth Cause of Action, find Section 481 of the LMRDA to be in violation of the non-delegation doctrine under Article I of the United States Constitution; and

5. For such other and further relief, including but not limited to attorney's fees, as the Court deems just and appropriate under the circumstances.

DATED this 16th day of January, 2025.

*/s/ Christina M. Jepson*
Erik A. Christiansen
Christina M. Jepson
Sarah Jenkins Dewey
PARSONS BEHLE & LATIMER

Gregg M. Formella
GREGG M. FORMELLA, JD

*Attorneys for Defendant SkyWest Inflight Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of January 2025, I filed a true and correct copy of the foregoing **AMENDED COUNTERCLAIM** via the Court, which automatically effectuated service on all parties of record.

*/s/ Sarah Jenkins Dewey*