Erik A. Christiansen, USB #7372
Christina M. Jepson, USB #7301
Sarah Jenkins Dewey, USB #15640
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
EChristiansen@parsonsbehle.com
CJepson@parsonsbehle.com
SDewey@parsonsbehle.com
ecf@parsonsbehle.com

Gregg M. Formella (*pro hac vice*)
GREGG M. FORMELLA JD
300 State St.
P.O. Box 92141
Southlake, TX 76092
gregg.formella@gmail.com

*Attorneys for Defendant SkyWest InFlight Association*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| LORI CHAVEZ-DEREMER, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST INFLIGHT ASSOCIATION,<br><br>Defendant. | **OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIM (ECF NO. 60)**<br><br>Case No. 2:24-cv-492-DBB-DBP<br><br>Hon. David Barlow<br><br>Magistrate Judge: Hon. Dustin B. Pead |

## BACKGROUND[1]

SkyWest InFlight Association ("SIA") is the labor organization representing the approximately 4,600 Flight Attendants employed by SkyWest Airlines to provide safety and in-cabin services to passengers on the carrier's thousands of daily flights to and from at least 250 commercial airports across the United States, Canada, and Mexico.[2] The Secretary of Labor

---

[1] Plaintiff's Motion to Dismiss Amended Counterclaim, ECF No. 60, challenges SIA's Second Cause of Action in its Amended Counterclaim, which alleges violations of the Freedom of Information Act ("FOIA"), ECF No. 43, Am. Countercl. at ¶¶ 91–102, and SIA's Fourth Cause of Action in its Amended Counterclaim, which alleges that the LMRDA violates the non-delegation doctrine derived from Article I, § 1 of the Constitution, *id.* ¶¶ 117–123. As explained in a previous filing, SIA agrees that its FOIA counterclaim would be better brought in a separate action against the Department of Labor. *See* ECF No. 44 at 2 n.2. SIA withdraws its Second Cause of Action without prejudice. SIA explicitly reserves all rights with respect to the FOIA requests at issue in its Second Cause of Action, including but not limited to the right to assert claims based on those requests in a separate action. Accordingly, this opposition only addresses Plaintiff's arguments with respect to SIA's Fourth Cause of Action, alleging the LMRDA violates the non-delegation doctrine.

[2] As a labor representative in the airline industry, SIA is governed by the Railway Labor Act, 45 U.S.C. §§ 151–188 ("RLA"). Enacted in its original form in 1926 to cover the railroad industry, *see* Railway Labor Act of 1926, Pub. L. No. 69-257, 44 Stat. 577 (1926), the RLA was amended in 1934 to include the airline industry within its coverage and to establish the National Mediation Board ("NMB") to oversee significant aspects of the RLA, including with regard to representation disputes. *See* 45 U.S.C. § 154 – *National Mediation Board; Railway Labor Act Amendments of 1934*, ch. 691, 48 Stat. 1185 (codified as amended at 45 U.S.C. § 154). The NMB has consistently interpreted the RLA as calling for employees of a particular workgroup (sometimes called a "craft or class") of a given carrier to be considered as a single unit across the entire carrier nationally, rejecting arguments for more localized units in order to uphold the RLA policy favoring labor stability in the transportation industry and avoiding the risk of service disruptions that could arise from fragmented representation or negotiating structures. *See, e.g.*, *Delta Air Lines Global Services*, 28 NMB 456, 460 (2001); *American Eagle Airlines*, 28 NMN 371, 381 (2001); *Continental Airlines/Continental* Micronesia, 27 NMB 76 (1999); LSG *Lufthansa Services,* 25 NMB 96 (1997); *Offshore Logistics, Aviation Services Division*, 11 NMB 144, 152 (1984); *Varig Airlines*, 10 NMB 223 (1983); *Galveston Wharves*, 4 NMB 200, 203 (1962); *KLM Royal Dutch Airlines,* 3 NMB 1 (1953); *NY Central R.R.*, 1 NMB 303, 312 (1945); *Pennsylvania R.R.*, 1 NMB 23, 24 (1937). Courts have long deferred to the NMB's approach of regarding any given craft or class as systemwide. *See, e.g.*, *Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 300-303 (1943), *aff'g Swithmen's Union v. National Mediation Board*, 135 F.2d 785, 795–96 (D.C. Cir. 1943) (referring to legislative history evidencing congressional intent that "all of the

("Secretary") filed this action against SIA alleging violations of § 481 of the Labor-Management Reporting and Disclosure Act ("LMRDA"). *See* Am. Compl., ECF No. 2. The Secretary's alleged claims turn in large part on her assertion that, under the LMRDA, SIA is a mere "local" labor organization and not, as SIA maintains, a "national" labor organization. *See id.*; 29 U.S.C. § 481. While the parties agree that a labor organization cannot be both a "national" and a "local" labor organization, the Secretary cannot point to any statutory definition of either term—because there is none. *See* 29 U.S.C. §§ 402, 481. Nor does the LMRDA otherwise provide any meaningful guidance regarding the meaning of either term or about how their meaning is to be determined. *Id.* There is no grant of authority to the Department of Labor ("DOL") to do so. *Id.* Yet, according to the Secretary, the LMRDA silently—without providing any specific criteria or meaningful constraints—leaves it to the DOL to fill the vacuum by independently defining these terms and applying § 481 as it goes along. In reality, the LMRDA's silence in this regard effectively allows the Secretary and DOL to create new law without proper congressional direction.[3]

---

employees of the carrier" who performed same the work were to be regarded as part of the same craft or class systemwide); *Railway Clerks v. Employees Ass'n*, 380 U.S. 650, 658–60 (1965); *International Association of Machinists & Aerospace Workers v. Trans World Airlines, Inc.*, 839 F.2d 809 (D.C. Cir. 1988); *Brotherhood of Maintenance of Way Employees v. Pan American World Airways, Inc.*, 795 F.2d 995 (D.C. Cir. 1986). Consistent with this, SIA's representation of SkyWest's Flight Attendants is on a national or "systemwide" basis, i.e., everywhere throughout the country, as well as on flights to and from Mexico and Canada.

[3] The DOL's manner of filling the vacuum often has been to create vague, meandering, and varying definitions of the terms—and then to selectively disregard aspects of its own guidance. *See, e.g.*, ECF No. 43, Am. Countercl. ¶¶ 12–30, 110, 113. As just one example among many, specifically in regard to SIA, the DOL has refused to acknowledge that certain of its own published guidance, including its Interpretive Manual's explicit statement that a labor organization's own designation of itself (as "national," "local," or other category of labor organization) is not insignificant and should be taken into account by the agency. *See* Interpretative Manual, Sec. 030.650 ("Determining Local or National Status"), *available at* https://www.dol.gov/sites/dolgov/files/OLMS/regs/compliance/interp_manual/Interpretative_Manual_112224.pdf (last visited April 25, 2025). Since well prior to the filing of this lawsuit, SIA has

Accordingly, SIA's Fourth Cause of Action in its Amended Counterclaim asserts that § 481 exceeds the scope of permissible delegation of legislative power and violates Article I, § 1, of the Constitution. *See* ECF No. 43, Am. Countercl. ¶¶ 117–123. The Secretary's Motion to Dismiss that claim does not show otherwise.

The Secretary's Motion rests largely on the fact that the nondelegation doctrine's "intelligible principle" test poses a relatively low bar which the Supreme Court has only found to be violated in two cases. However, the Secretary's Motion ignores important factors that courts should consider when analyzing whether a particular statute violates the nondelegation doctrine. This includes whether the authority a given statute delegates is broad in scope, whether the duration of the authority delegated is temporary or indefinite, and the nature and importance of the interests involved. As explained below, the authority the Secretary claims to have been delegated here is extraordinarily far-reaching, touching on essentially all corners of the national economy. Moreover, the duration is indefinite, and it touches close to a fundamental right in freedom from unreasonable interference with private employment. Given these factors, it is clear that both the DOL and the Secretary are vastly overreaching: the law is not the DOL's to create in its own image, much less to do so indefinitely and in such important regards. The LMRDA does not provide adequate guidance given the scope and unlimited duration of the authority delegated here and the

---

formally designated itself to the DOL as a "national" labor organization, including on a DOL-required form referred to as "Form LM-1, Labor Organization Information Report." (A copy of SIA's Form LM-1 is accessible using the search function of OLM's "Public Disclosure Room." *See* https://olmsapps.dol.gov/olpdr/ (last visited April 25, 2025).) Inexplicably, the DOL has indicated that, in regard to SIA, it has ignored this factor along with many others that collectively compel SIA to be regarded as a "national" labor organization.

importance of the interest involved. This violates the Constitution and requires the Court to deny the Secretary's Motion.

**LEGAL STANDARDS**

The nondelegation doctrine derives from Article I of the Constitution, which provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1. "Accompanying that assignment of power to Congress is a bar on its further delegation." *Gundy v. United States*, 588 U.S. 128, 135 (2019) (plurality opinion). Thus, "[u]nder the nondelegation doctrine, Congress may not constitutionally delegate its legislative power to another branch of government." *United States v. Barrett*, 496 F.3d 1079, 1108 (10th Cir. 2007) (citations omitted). Congress may, however, "obtain[] the assistance of its coordinate Branches." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). But the scope of available assistance is not unbounded.

A proper congressional delegation must "lay down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform[.]" *Id.* (quotation marks and citation omitted) (cleaned up).[4] "Although the standard is

[4] The "intelligible principle" test has been the subject of increasing suspicion from commentators and members of the Supreme Court alike. *See Gundy*, 588 U.S. at 164 n.62 (Gorsuch, J., dissenting) (collecting critical authorities). In *Department of Transportation v. Association of American Railroads*, for example, Justice Thomas noted that "the Constitution categorically forbids Congress to delegate its legislative power to any other body," and that "it has become increasingly clear" that the "intelligible principle" test has become a "boundless standard" that "largely abdicates [the Supreme Court's] duty to enforce that prohibition[.]" 575 U.S. 43, 77 (2015) (Thomas, J., concurring). Finding that the "intelligible principle" test "does not adequately reinforce the Constitution's allocation of legislative power," Justice Thomas would have rejected it then and instead "return[ed] to the original understanding of the federal legislative power and require that the Federal Government create generally applicable rules of private conduct only through the constitutionally prescribed legislative process." *Id.* More recently, three members of the Supreme Court dissented from the plurality opinion finding no nondelegation problem in

'not demanding,' . . . it is not meaningless either." *Kaweah Delta Health Care Dist. v. Becerra*, 123 F.4th 939, 952 (9th Cir. 2024) (citation omitted). To pass constitutional muster, a delegation must "'clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority.'" *United States v. Brown*, 348 F.3d 1200, 1216 (10th Cir. 2003) (quoting *Mistretta*, 488 U.S. 372–73). Cases applying the nondelegation doctrine provide additional factors to consider when evaluating whether a delegation is proper.

The scope of the delegation must be considered when evaluating whether it comes with sufficient guidance. Put differently, "the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 475 (2001) (citations omitted). When the scope of delegated authority increases, "the standards must be correspondingly more precise." *See Synar v. United States*, 626 F. Supp. 1374, 1386 (D.D.C.) (three-judge panel), *aff'd sub nom. Bowsher v. Synar*, 478 U.S. 714 (1986).

---

*Gundy*, explaining that the "intelligible principle" test "has been abused to permit delegations of legislative power that on any other conceivable account should be held unconstitutional." *Gundy*, 588 U.S. at 149–79 (Gorsuch, J., dissenting; joined by Roberts, C.J., and Thomas, J.). These Justices would revisit the "intelligible principle" test now. *Id.* Justice Alito concurred in *Gundy*'s judgment only, stating that he would support an effort to reconsider the Supreme Court's approach to the nondelegation doctrine if a majority of the Court were also willing. *Id.* at 149 (Alito, J., concurring). Given the addition of several new Justices since *Gundy* was decided, the nondelegation doctrine appears poised for a significant tightening, if it is not replaced altogether. *See* 4 Charles H. Koch, Jr. & Richard Murphy, *Administrative Law and Practice* § 11:13 (3d ed.) (noting that "Justice Kavanaugh did not participate in [*Gundy*]" and that it "therefore seems plausible that the conservative wing of the Court has sufficient support to rework the nondelegation doctrine along Justice Gorsuch's preferred lines"). Notably, on March 26, 2025, the Supreme Court heard oral argument in *FCC v. Consumers' Research*, which raises a nondelegation challenge to certain FCC programs. *See FCC v. Consumers' Research*, No. 24-354, *docket available at* https://www.supremecourt.gov/docket/docketfiles/html/public/24-354.html (last visited April 25, 2025). In any case, as explained here, the LMRDA fails even the current "intelligible principle" test. SIA reserves all rights with respect to any potential change in the law.

The duration of the delegated power is also relevant, if not itself dispositive. For example, the plurality in *Gundy* found it relevant that the authority conveyed to the Attorney General by the statute at issue was "only temporary." *See Gundy*, 588 U.S. at 147; *see also United States v. Emerson*, 846 F.2d 541, 545–46 (9th Cir. 1988) (finding delegation proper in part because the delegated power was temporary); *Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Connally*, 337 F. Supp. 737, 754 (D.D.C. 1971) ("It is also material, though not dispositive, to note the limited time frame established by Congress for the stabilization authority delegated to the President.").

The interests involved are also relevant. Congress' power to delegate narrows—and the need for clear guidance increases—when regulations potentially affect fundamental rights. *See United States v. Robel*, 389 U.S. 258, 275 (1967) (Brennan, J., concurring in the result) (citations omitted); *see also Kent v. Dulles*, 357 U.S. 116, 129 (1958) ("Where activities or enjoyment, natural and often necessary to the well-being of an American citizen, such as travel, are involved, we will construe narrowly all delegated powers that curtail or dilute them." (citations omitted)). Some courts have described the nondelegation doctrine as properly viewed as forming a continuum depending on the interests or rights involved. *See, e.g.*, *United States v. Eastland*, 694 F. Supp. 512, 515 (N.D. Ill. 1988) (citation omitted). Applying all these principles shows the LMRDA violates the nondelegation doctrine.

## ARGUMENT

### I. The LMRDA's delegation is broad, indefinite, and touches close to a fundamental right

The nondelegation analysis begins by evaluating "what task" the challenged statute delegates and "what instructions it provides." *See Gundy*, 588 U.S. at 135–36 (citations omitted).

The LMRDA provision at issue here is § 481, which delegates to the Secretary of Labor the task of defining "local" and "national" labor organizations and deciding which label applies to a particular labor organization. *See* 29 U.S.C. § 481 (setting different election requirements for "local" and "national" labor organizations); *see also* 29 U.S.C. § 482(b) (requiring Secretary to investigate complaints and, upon a finding of probable cause by the Secretary, to bring a civil action against the labor organization).[5]

This delegation is broad in scope. The LMRDA broadly defines "[l]abor organizations" to mean:

> a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.

29 U.S.C. § 402(i). The LMRDA's definitions of "[c]ommerce" and "[i]ndustry affecting commerce" are similarly broad. *See* 29 U.S.C. § 402(a), (c).

As a practical matter, the LMRDA's requirements pervade the entire US economy. Workers are represented by labor organizations in virtually all industries across the country, ranging from agriculture, to manufacturing, to transportation, to information, to finance, to

---

[5] That § 482 imposes on the Secretary a mandatory duty to bring civil actions does not obviate the delegation issue here. *Cf.* Mot. at 15 n.72 & accompanying text. This mandatory duty is only triggered when the Secretary "finds probable cause to believe that a violation of this subchapter has occurred," and this finding, which requires the Secretary to define and apply the terms "local" and "national" labor organization, is left to the Secretary's discretion. *See* 29 U.S.C. § 482(b).

hospitality, and everything in between. *See Union Members – 2024*, at Table 3 (U.S. Dep't of Labor, Bureau of Labor Statistics), Jan. 28, 2025, attached as Ex. A.[6] Categories of non-supervisory jobs and occupations across all labor organizations include professionals like lawyers, doctors, healthcare providers, and educators; workers in service occupations, including protective service workers, food workers, and building and grounds maintenance workers; sales workers; farmers; construction workers; and many more. *Id.* All told, roughly ten percent of the U.S. workforce, including almost six percent of workers throughout the market economy (commonly referred to as the "private sector") is represented by a labor organization. *Id.* at 1–2.[7]

This delegation is also unlimited in duration. Unlike the delegation to the Attorney General at issue in *Gundy*, which was "only temporary," *Gundy*, 588 U.S. at 147, the LMRDA's delegation to the Secretary of Labor is indefinite, *see* 29 U.S.C. §§ 481, 482(b). *Cf. Emerson*, 846 F.2d at 545 (temporary scheduling of controlled substance as an emergency measure, lasting at most eighteen months); *Amalgamated Meat Cutters*, 337 F. Supp. at 754 (delegation of stabilization authority to

[6] SIA requests that the Court take judicial notice of this publication. *See* Fed. R. Evid. 201; *see also Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (recognizing that court may take judicial notice of facts when considering a motion to dismiss under Rule 12(b)(6) (citation omitted)); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.6 (9th Cir. 2014) (taking judicial notice of recession based in part on data from U.S. Department of Labor, Bureau of Labor Statistics). This publication is also available online at https://www.bls.gov/news.release/pdf/union2.pdf (last visited April 25, 2025).

[7] Because the LMRDA's coverage is so expansive, the single-industry cases the Secretary cites, *e.g.*, *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591 (1944), *see* Mot. at 13 nn.55, 58, are largely inapposite. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Occupational Safety & Health Admin.*, 938 F.2d 1310, 1317 (D.C. Cir. 1991) (noting that program at issue was "immense, encompassing all American enterprise" and that "[c]ases upholding delegations governing a single industry," including *Hope Nat. Gas* and others, were "thus inapposite").

President which, by its own terms, expired in approximately six months and had extensions of even shorter duration).

In terms of the nondelegation continuum, the LMRDA's delegation here falls somewhere on the more-guidance-required end of the continuum. The Supreme Court has long recognized that "[t]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment[.]" *See Robel*, 389 U.S. at 270 (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)). While the LMRDA provision at issue does not necessarily deprive workers of their chosen profession, it touches close to that fundamental right and affects workers' freedom to manage their chosen profession.

To sum up, the LMRDA provision in question is broad in scope, unlimited in duration, and touches close to a fundamental right. Consequently, this delegation must provide more specific guidance or else it offends the Constitution. *See supra* at 5–7. As discussed below, the LMRDA lacks adequate guidance and must be struck down.

## II. The LMRDA does not provide adequate guidance to the Secretary and thus violates Article I, § 1 of the U.S. Constitution

The LMRDA does not "clearly delineate[]" a general policy or set out boundaries to guide how the Secretary should define "local" and "national" labor organizations or apply § 481. *See Brown*, 348 F.3d at 1216 (quoting *Mistretta*, 488 U.S. 372–73). To be sure, the LMRDA's declaration of findings, purposes, and policy section expresses some general policies. *See* 29 U.S.C. § 401. These include, for example, protecting employees' rights to organize and bargain collectively; requiring labor organizations, workers, and officials to adhere to the highest ethical standards in administering their affairs and organizations in the interest of a free flow of commerce;

protecting employees and the public from corruption and the disregard for the rights of individual employees; and eliminating "improper practices" on the part of labor organizations. *See id.* But these general policies do not set out "an intelligible principle" to guide, and against which to measure, the Secretary's exercise of her delegated authority to define "local" and "national" labor organizations and to apply § 481. *See Gundy*, 588 U.S. at 135 ("[A] statutory delegation is constitutional as long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." (citations omitted) (cleaned up)).

Nor does the LMRDA elsewhere contain clear guidance or boundaries for the authority it apparently delegates to the Secretary. The LMRDA does not define "local" and "national" labor organizations. *See* 29 U.S.C. § 402. The Secretary's assertion that the LMRDA "classifies labor organizations as local" when they "primarily represent[] members within a specific location or bargaining unit" and as "national" when they "charter[] or affiliat[e with] multiple subordinate bodies across jurisdictions" is not supported by the provision she cites. *See* Mot. at 16 n.76 and accompanying text (citing 29 U.S.C. § 402(j)). Section 402(j) sets out when a "labor organization shall be deemed to be engaged in an industry affecting commerce." *See* 29 U.S.C. § 402(j). It does not purport to define, nor can it reasonably be interpreted to define, "local" or "national" labor organizations.[8] *See id.*

---

[8] As explained in SIA's Amended Counterclaim, the only tenable classification of SIA is as a "national" labor organization. As a labor representative in the airline industry, SIA is governed by the RLA, which, in the interest of preventing interruptions in the national flow of commerce, requires all employees of a given carrier who are part of a particular craft or class to be represented on a national basis by a single organization. For SkyWest's 4,600 Flight Attendants—who are based in 20 cities across the country and who fly into 45 states and two foreign countries—that organization is SIA. Significantly, the LMRDA explicitly defers to the RLA. *See* 29 U.S.C. § 523.

The other provisions the Secretary cites are equally unhelpful toward guiding the Secretary's task. Many of the provisions the Secretary cites have no apparent bearing on how the Secretary should carry out this delegated authority. For example, the Secretary does not explain how the LMRDA's provision setting a five-year document-retention period guides the Secretary's classification of labor organizations as "local" or "national" or the application of § 481 in general. *See* Mot. at 14 (citing, *inter alia*, 29 U.S.C. § 436 (Retention of Records)). And while the Secretary correctly notes that the LMRDA contains provisions regulating elections and allowing the Secretary to investigate and bring enforcement actions, *see* Mot. at 14–16 (citations omitted), these provisions provide no guidance on how the Secretary is to classify labor organizations as "local" or "national," much less the type of clear guidance that is necessary when, like here, the delegated authority is broad in scope and duration and touches close to a fundamental right. *See supra* at 5–7. The LMRDA effectively grants the Secretary "plenary power to determine" how the LMRDA will apply to different labor organizations, requiring them to hold elections how and when she deems fits. This is the sort of power the Supreme Court has recognized might go too far. *See Gundy*, 588 U.S. at 136 ("The provision, in Gundy's view, 'grants the Attorney General plenary power to determine SORNA's applicability to pre-Act offenders—to require them to register, or not, as she sees fit, and to change her policy for any reason and at any time.' . . . If that were so, we would face a nondelegation question.").

SIA has classified itself and acted as a "national" labor representative for decades. Notably, the DOL recognizes many labor representatives that are similarly situated to SIA—including the Association of Professional Flight Attendants—as "national" labor organizations. *See, e.g.*, ECF No. 43, Am. Countercl. at ¶¶ 14–30. This is but a sampling of the reasons why SIA must be classified as a "national" labor organization.

The Secretary's reliance on § 438, which delegates certain authority to the Secretary, is unavailing for a few reasons. *See* Mot. at 16 (citations omitted). The main reason is that § 438 on its face speaks only to reporting requirements. *See* 29 U.S.C. § 438 (The Secretary shall have authority to issue, amend, and rescind rules and regulations ***prescribing the form and publication of reports required to be filed under this subchapter*** and such other reasonable rules and regulations (including rules prescribing reports concerning trusts in which a labor organization is interested) as he may find necessary to prevent the circumvention or evasion ***of such reporting requirements***. . . ." (emphasis added)). Even if this provision applied beyond reporting requirements, it provides no guidance or boundaries for how the Secretary should exercise her authority to define "local" and "national" labor organizations and to apply § 481. *See* 29 U.S.C. § 438. Thus, at best, § 438 satisfies only one of *Mistretta*'s three requirements, that is, identifying the "public agency which is to apply" the delegated authority. *See Mistretta*, 488 U.S. at 372–73 (explaining that a delegation is constitutional "if Congress [1] clearly delineates the general policy, [2] the public agency which is to apply it, and [3] the boundaries of this delegated authority'" (citation omitted)).[9] This leaves two requirements unsatisfied, and this means that the Secretary's Motion cannot succeed.

At bottom, the LMRDA does not "lay down . . . an intelligible principle to which the" DOL or the Secretary "is directed to conform." *See Mistretta*, 488 U.S. at 372 (quotation marks and

[9] The cases the Secretary cites "recogniz[ing] the Department's discretion in classifying labor representatives based on their structure and functions" are unavailing because none of them specifically examine whether the LMRDA violates the nondelegation doctrine. *See* Mot. 16 n.77 & accompanying text (citing *Wirtz v. Hotel, Motel & Club Emp. Union, Loc. 6*, 391 U.S. 49 (1968); *Donovan v. Int'l Bhd. of Boilermakers*, 736 F.2d 618 (10th Cir. 1984); *Loc. 334 v. United Ass'n of Journeymen*, 669 F.2d 129 (3d Cir. 1982)).

citation omitted).[10] Nothing in the LMRDA indicates how the DOL or the Secretary should classify labor organizations as "local" or "national" in applying § 481. This offends the Constitution and requires denial of the Secretary's Motion.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion to Dismiss Amended Counterclaim (ECF No. 60).[11]

DATED April 25, 2025.

/s/ Christina M. Jepson
Erik A. Christiansen
Christina M. Jepson
Sarah Jenkins Dewey
PARSONS BEHLE & LATIMER

Gregg M. Formella
GREGG M. FORMELLA, JD

*Attorneys for Defendant SkyWest InFlight Association*

[10] The "binding precedent" the Secretary cites does not control the outcome here. *See* Mot. at 17 n.78 & accompanying text (citations omitted). These cases do not examine the LMRDA and therefore are not directly on point. *See Am. Power & Light Co. v. Sec. & Exch. Comm'n*, 329 U.S. 90 (1946) (examining constitutionality of § 11(b)(2) of the Public Utility Holding Company Act of 1935); *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 678 F. Supp. 3d 88, 107 (D.D.C. 2023) (examining whether Financial Industry Regulatory Authority violated private or public nondelegation doctrine), *rev'd in part sub nom. Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314 (D.C. Cir. 2024). And even if *Scottsdale* were on point (which it is not), that district court case is not binding on this Court.

[11] Although the Court can and should deny the Secretary's Motion without delay, there is good reason for the Court to hold off on ruling until, for example, the Court rules on the parties' anticipated cross-motions on whether SIA is properly categorized as a "local" or "national" labor organization. As explained above, the U.S. Supreme Court is soon expected to issue a decision in *Consumers' Research*, which very well may affect the analysis concerning the Secretary's Motion. *See supra* at 5 n.4. Waiting to decide this Motion together with the approaching cross-motions would promote judicial economy because it would allow time for a decision to issue in *Consumers' Research*.

# CERTIFICATE OF SERVICE

I certify that on April 25, 2025, I caused a true and correct copy of the foregoing **OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIM** to be filed via the Court's CM/ECF system which served all counsel of record appearing thereon.

/s/ Christina M. Jepson