THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LORI CHAVEZ-DEREMER, Secretary, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>SKYWEST INFLIGHT ASSOCIATION,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [60] PARTIAL MOTION TO DISMISS AMENDED COUNTERCLAIM**<br><br>Case No. 2:24-cv-00492-DBB-CMR<br><br>District Judge David Barlow<br><br>Chief Magistrate Judge Dustin B. Pead |

Before the court is Counter-Defendant Secretary of Labor Lori Chavez-DeRemer's ("Secretary") Motion to Dismiss Claims Two and Four of Counter-Plaintiff SkyWest Inflight Association's ("SIA") Amended Counterclaim.[1] Claim Two asserts violations of the Freedom of Information Act ("FOIA").[2] Claim Four asserts violations of the nondelegation doctrine.[3] In the briefing, SIA "agree[d] that its FOIA counterclaim would be better brought in a separate action against the Department of Labor" and withdrew the claim without prejudice.[4] As such, the court only considers whether the Labor-Management Reporting and Disclosure Act ("LMRDA") violates the nondelegation doctrine. For the following reasons, the court concludes that it does not.

---

[1] Secretary's Partial Mot. to Dismiss Am. Counterclaim ("Mot."), ECF No. 60, filed March 13, 2025.
[2] SIA's Am. Counterclaim ¶¶ 91–102, ECF No. 43, filed January 16, 2025.
[3] *Id.* ¶¶ 117–123.
[4] SIA's Opp'n to DOL's Mot. ("Opp'n") 2 n.1, ECF No. 67, filed April 25, 2025; *see also* Fed. R. Civ. P. 41(c) (allowing dismissal of a counterclaim before a responsive pleading is served).

## BACKGROUND

SIA is the labor organization representing the flight attendants employed by SkyWest Airlines.[5] The Secretary filed this action against SIA alleging violations of § 481 of the LMRDA.[6] The Secretary's claims turn in part on her assertion that, under the LMRDA, SIA is a "local" labor organization and not, as SIA argues, a "national" labor organization.[7]

On January 16, 2025, SIA filed an Amended Counterclaim, which included a claim that the LMRDA violates the nondelegation doctrine.[8] On March 13, 2025, the Secretary moved to dismiss the claim.[9] On April 25, 2025, SIA filed an Opposition.[10] On May 9, 2025, the Secretary filed a Reply.[11]

## STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] The court does not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[14]

---

[5] Opp'n 2.
[6] Am. Compl. ¶¶ 85–89, ECF No. 2, filed August 1, 2024.
[7] *See id.*
[8] SIA's Am. Counterclaim ¶¶ 91–102.
[9] ECF No. 60.
[10] ECF No. 67.
[11] Secretary's Reply in Support of Mot. to Dismiss Am. Counterclaim ("Reply"), ECF No. 68.
[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[13] *Id.*
[14] *Id.* at 678.

# DISCUSSION

The Secretary moves to dismiss SIA's Fourth Claim, which asserts that the LMRDA violates the nondelegation doctrine by providing the Secretary and Department of Labor broad authority to define "national" and "local" labor organizations without specific criteria on how such definitions should be determined or applied.[15]

## I.  THE NONDELEGATION DOCTRINE

Article I of the Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."[16] "Accompanying that assignment of power to Congress is a bar on its further delegation: "Legislative power . . . belongs to the legislative branch, and to no other."[17] While seemingly categorical, the Supreme Court repeatedly has instructed the lower courts that the nondelegation doctrine is not an absolute bar. Instead, the Supreme Court has held that Congress may "obtain[] the assistance of its coordinate Branches"[18] and "may delegate responsibility to the executive branch so long as Congress provides an 'intelligible principle' to guide the exercise of the power."[19] Under that test, Congress must make "clear both 'the general policy' that the agency must pursue and 'the boundaries of [its] delegated authority.'"[20] "Congress may 'vest[] discretion' in executive agencies to implement and apply the laws it has enacted—for example, by deciding on 'the details of [their] execution.'"[21]

---

[15] *See* SIA's Am. Counterclaim ¶ 119.
[16] U.S. Const., Art. I. § 1.
[17] *FCC v. Consumers' Rsch.*, No. 24-354, 606 U.S. __ (June 27, 2025), 10.
[18] *Mistretta v. United States*, 488 U.S. 361, 372 (1989).
[19] *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 914 (10th Cir. 2004).
[20] *FCC*, 606 U.S. __ (June 27, 2025), 11 (citing *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).
[21] *Id.* (citing *J. W. Hampton, Jr., & Co.* v. *United States*, 276 U. S. 394, 406 (1928)).

## II.   THE LMRDA

The LMRDA became law in 1959. It was enacted, in part, "to protect employees' rights to organize, choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid or protection."[22] Congress found the statute "necessary to eliminate or prevent improper practices on the part of labor organizations, employers, [and] labor relations consultants . . . ."[23] The statute contains six titles: Title I (Bill of Rights of Members of Labor Organizations), Title II (Reporting by Labor Organizations, Officers and Employees of Labor Organizations, and Employers), Title III (Trusteeships), Title IV (Elections), Title V (Safeguards for Labor Organizations), and Title VI (Miscellaneous Provisions). Together, these titles address various issues to effectuate the policy set forth in the statute as it applies to reporting, disclosures, and elections:[24] dues, fees, assessments, enforcement, collective bargaining agreement access, labor organization reports, employer reports, labor organization officer responsibilities, and elections requirements, among others.

The latter issue—the elections requirements—forms the basis for the parties' dispute. The LMRDA prescribes a few different requirements regarding elections in "local" and "national" labor organizations.[25] The statute defines numerous terms, including "labor organization," but does not define the words "local" and "national."[26] Instead, the statute effectively leaves to the Secretary the task of deciding which label applies to a particular organization. Pertinent here, the distinction changes the required election interval: elections are required every three years for a local organization and every five years for a national organization.[27]

---

[22] 29 U.S.C. § 401(b).
[23] *Id.* § 401(c).
[24] Of course, this does not encompass the full scope of the issues captured by the LMRDA.
[25] *See, e.g.*, *id.* § 481 (setting different election requirements for "local" and "national" labor organizations).
[26] *See id.* § 402.
[27] *Id.* § 481.

4

The LMRDA requires the Secretary to investigate complaints alleging a violation of the LMRDA's election procedures.[28] If the Secretary finds probable cause of an unremedied violation, the Secretary must bring a civil action against the labor organization to set aside the invalid election, if any, and oversee a new election or conduct a hearing and vote on the removal of officers under the Secretary's supervision "in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe."[29] The Secretary also has the authority to issue "reasonable rules and regulations . . . as he may find necessary to prevent the circumvention or evasion of" labor organizations' reporting requirements.[30]

### III. SIA'S ARGUMENT

SIA argues that because the LMRDA does not define or otherwise explain the difference between a "national" and a "local" labor organization, Congress "effectively allow[ed] the Secretary and DOL to create new law without proper congressional direction."[31]

In its most recent nondelegation decision, the Supreme Court taught that "our nondelegation precedents provide context—showing what kinds of statutory schemes have passed, and what kinds have failed, the demand that Congress give adequate guidance."[32] Accordingly, the court turns to those precedents.

Only two statutes ever have been found to violate the nondelegation doctrine, so the court starts there. Of these two violative statutes, one "provided literally no guidance for the exercise of discretion, and the other . . . conferred authority to regulate the entire economy on the basis of

---

[28] *Id.* § 482.
[29] *Id.*
[30] *Id.* § 438.
[31] Opp'n 3.
[32] *FCC*, 606 U.S. __ (June 27, 2025), 21.

no more precise a standard than stimulating the economy by assuring 'fair competition.'"[33]

Describing these two statutes most recently, the Supreme Court found:

> In one case, the statute empowered the President to bar the transport of petroleum products while "establish[ing] no criterion" and "declar[ing] no policy" for whether, when, or how he should do so. The statute in the second case was even worse. It authorized the President to approve "codes of fair competition" for "the government of trade and industry throughout the country," yet imposed "few restrictions" and "set[] up no standards" aside from a "statement of the general aims of rehabilitat[ing], correct[ing,] and expand[ing]" the economy. The law thus gave the President "virtually unfettered" authority to govern the Nation's trades and industries.[34]

The LMRDA is nothing like the two violative statutes. It establishes reporting, disclosure, and election requirements in the area of labor organizations. The statute expressly sets forth relevant policy (for example, "to prevent improper practices on the part of labor organizations [and] employers")[35] and articulates various specific requirements pertaining to labor reporting, disclosures, and elections (for example, labor organizations must adopt a constitution and bylaws addressing numerous detailed issues and prepare annual reports with specific information on a multitude of topics).[36] It does not generally lack policy, criteria, or guidance like the two violative statutes. Nor does it give the executive branch unfettered authority to govern "the entire economy"[37] or "the Nation's trades and industries."[38] The LMRDA's lack of a definition of "local" and "national" does not begin to approach either of the statutes that violated the nondelegation doctrine.

On the other hand, considering the cases that have passed muster, the Supreme Court has approved of far broader delegations than the one present here. These have included delegations

---

[33] *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 474 (2001).
[34] *FCC*, 606 U.S. __ (June 27, 2025), 21–22 (internal citations omitted).
[35] 29 U.S.C. § 401(c).
[36] *Id.* § 201(a).
[37] *Whitman*, 531 U.S. at 474.
[38] *FCC*, 606 U.S. __ (June 27, 2025), 22.

6

to regulate in the "public interest,"[39] set "fair and equitable" prices and "just and reasonable" rates,[40] issue whatever air quality standards are "requisite to protect the public health,"[41] prevent "unfair[] or inequitabl[e] distribut[ion] [of] voting power among security holders,"[42] and determine and recover "excess profits" from military contractors.[43]

Taken together, Supreme Court precedent suggests that Congress' decision not to define "local" and "national" in the LMRDA does not violate the nondelegation doctrine. In interpreting the LMRDA, the Tenth Circuit found that "Congress evidently considered it especially important to ensure the accountability of those officials with whom union members have the most direct contact"—particularly local labor organizations.[44] As a result, the Tenth Circuit determined that, under the LMRDA, whether a labor organization is properly classified as local or national depends on its functions and structure, rather than geographic proximity.[45] Applying this approach, the court had little difficulty in evaluating the Secretary's determination that a particular labor organization was local, rather than national. In other words, the Tenth Circuit discerned from the LMRDA an operational approach distinguishing local labor organizations from national ones, despite the lack of an explicit definition.

Recognizing that the Supreme Court's "intelligible principle" test "poses a relatively low bar,"[46] the SIA argues that delegation of power here is of great import because "the LMRDA's requirements pervade the entire U.S. economy," affect "virtually all industries across the

---

[39] *Gundy*, 588 U.S. at 146 (citing *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 216 (1943) and *New York Cent. Sec. Corp. v. United States*, 287 U.S. 12, 24 (1932)).
[40] *Id.* (citing *Yakus v. United States*, 321 U.S. 414, 427 (1944) and *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591 (1944)).
[41] *Id.* (citing *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 472 (2001)).
[42] *Whitman*, 531 U.S. at 474 (citing *Am. Power & Light Co. v. Sec. & Exch. Comm'n*, 329 U.S. 90, 104 (1946)).
[43] *Id.* (citing *Lichter v. United States*, 334 U.S. 742, 783–86 (1948)).
[44] *Donovan v. Nat'l Transient Div., Int'l Bhd. of Boilermakers*, 736 F.2d 618, 622–23 (10th Cir. 1984).
[45] *Id.* at 623.
[46] Opp'n 4.

7

country," and "affect[] workers' freedom to manage their chosen profession."[47] To be sure, many workers are members of unions, and those unions operate in many industries throughout the United States. But SIA's characterization of the LMRDA is inapt: it governs reporting, disclosure, and election requirements for labor organizations and employers. That subject, while consequential, does not impinge "workers' freedom," nor does it "pervade the U.S. economy" in a way that raises the bar the Supreme Court has set. It is not inconsequential that Congress chose not to define "local" and "national," but not nearly to the extent or in the way the SIA suggests. The instant issue is closer to a "narrow, technical issue" than "an agency action [that] will 'affect the entire national economy.'"[48]

SIA contends that the "duration of the delegated power is also relevant."[49] It is true that courts considering nondelegation challenges have occasionally remarked on the temporary nature of a particular delegated power.[50] But most statutes and their delegations are indefinite, not time limited. Accordingly, that the LMRDA's lack of an explicit "local" and "national" definition will not change unless Congress chooses to amend this 65-year-old law does not make it different from most statutes and does not change the result.

Finally, SIA notes that the "intelligible principle" test "has been the subject of increasing suspicion from commentators and members of the Supreme Court alike."[51] The question for this court is not the merits of the "intelligible principle" test, nor whether it might have developed differently. This court is bound by Supreme Court precedent and is not free to chart a different course.

---

[47] *Id.* at 8–10.
[48] *FCC*, 606 U.S. __ (June 27, 2025), 11.
[49] Opp'n 7.
[50] *See Gundy*, 588 U.S. at 147.
[51] Opp'n 5 n.4.

Under current Supreme Court jurisprudence, the LMRDA's lack of definitions for "local" and "national" labor organizations does not invalidate the law under the nondelegation doctrine. The statute provides clear legislative objectives, emphasizes the protection of employees' rights to organize and prevent improper practices by labor organizations, and includes specific reporting, disclosure, and election requirements pertaining to labor organizations, as well as an enforcement mechanism by the Secretary.[52] Congress, in enacting the LMRDA, "clearly delineate[d] the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority."[53]

Accordingly, the court concludes that the LMRDA provides an intelligible principle under the nondelegation doctrine. SIA's Fourth Counterclaim is dismissed.

## ORDER

The court GRANTS the Secretary's partial motion to dismiss SIA's Counterclaim.[54] The court DISMISSES Claim Two (FOIA) without prejudice. The court further DISMISSES Claim Four (nondelegation doctrine) with prejudice.

Signed July 28, 2025.

BY THE COURT

David Barlow
United States District Judge

---

[52] *Id.* §§ 401, 402, 438, 481, 482. Section 482(b), for example, delegates to the Secretary authority to prescribe rules and regulations necessary to enforce election violations, which requires being able to distinguish between local and national organizations—each of which are subject to different election requirements.
[53] *Am. Power & Light Co.*, 329 U.S. 90, 105 (1946).
[54] ECF No. 60.